## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MUELLER WATER PRODUCTS, INC.,**
**MUELLER INTERNATIONAL, INC.,**
**and MUELLER CO. LTD.,**

       Plaintiffs,

v.

**MUELLER INDUSTRIES, INC.,**

       Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiffs Mueller Water Products, Inc., Mueller International, Inc., and Mueller Co. Ltd. state the following for their Complaint against Defendant Mueller Industries, Inc. ("Defendant"):

## NATURE OF THE ACTION

1.     This is an action at law and in equity for trademark infringement, unfair competition, and deceptive trade practices arising under the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 *et seq.*, and the common law.

2.     Plaintiffs, through their predecessor and parent corporations, have been in existence since 1857, using the MUELLER trademark in connection with water-infrastructure and flow-control products such as pipes, fittings, hydrants, and the like.

3.     Defendant Mueller Industries originated as a division of one of Plaintiffs' predecessors.  At the time Defendant became an independent entity in 1927, Defendant was using the term "MUELLER BRASS" in connection with brass goods distinct from those offered by Plaintiffs under the MUELLER trademark, and marketed through unrelated channels of trade.

4.     The parties' co-existence continued for some time without consumer confusion, largely because the parties' marks, goods, and channels of trade were sufficiently different.   Recently, however, Defendant has begun using the MUELLER trademark standing alone, Defendant has expanded its product lines, and Defendant's goods branded with the MUELLER trademark are now offered in overlapping channels of trade with Plaintiffs' goods.  Members of the public have been and will continue to be confused.   Indeed, as a result of Defendant's progressive encroachment, confusion is now inevitable.

## JURISDICTION AND VENUE

5.     The Court has original jurisdiction of the action pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.  Further, the Court has supplemental jurisdiction over the state claims alleged herein because the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy as provided in 28 U.S.C. § 1367.

6.     Venue and personal jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1391.  On information and belief, Defendant has offered for sale and sold products in this District under the infringing MUELLER mark, has entered into contracts in this District, and has caused injury to Plaintiffs in this District.

## THE PARTIES

7.     Plaintiff Mueller Water Products, Inc. ("MWP") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at 1200 Abernathy Road NE, Suite 1200, Atlanta, Georgia 30328.  MWP is a leading North American manufacturer and marketer of infrastructure and flow control products for use in water distribution networks and treatment facilities.

8.     Plaintiff Mueller International, Inc. ("Mueller International") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at 1200 Abernathy Road NE, Suite 1200, Atlanta, Georgia 30328.  Mueller International is a subsidiary of MWP and is the owner by assignment of the MUELLER trademark registrations set forth in this Complaint.

9.     Plaintiff Mueller Co. Ltd. ("Mueller Co.") is a limited partnership organized and existing under the laws of the State of Alabama, having its principal place of business located at 633 Chestnut Street, Suite 1200, Chattanooga, Tennessee 37450.  Mueller Co. is a subsidiary of MWP and a licensee of Mueller International.

10.     MWP, Mueller International, Mueller Co., and their predecessors-in-interest, subsidiaries, and affiliated entities are referred to collectively as "Plaintiffs" or "Mueller Water."

11.     On information and belief, Defendant Mueller Industries, Inc. is a corporation organized and existing under the laws of Delaware, having its principal place of business located at 8285 Tournament Drive, Suite 150, Memphis, Tennessee 38125.  Defendant and its predecessors-in-interest are referred to collectively as "Defendant" or "Mueller Industries."

4

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Mueller Water and Its Trademarks.**

12.    Plaintiffs' predecessor-in-interest was founded in 1857 as a gunsmith's shop in Decatur, Illinois, by Hieronymus Mueller, and originally was called The Mueller Manufacturing Company.   The Mueller Manufacturing Company quickly transformed into a manufacturer of brass and related goods and was incorporated in 1893.

13.    Plaintiffs have changed corporate names and structures several times since the inception of The Mueller Manufacturing Company.   The Mueller Manufacturing Company became H. Mueller Mfg. Company, which became Mueller Co., which became Mueller Co. Ltd., which is now a subsidiary of Mueller Water Products, Inc.   At all times since the founding of The Mueller Manufacturing Company, Plaintiffs have used the MUELLER name (the "MUELLER Mark") to identify many of its broad range of goods and services.

14.    Mueller Water has grown to become a leading North American manufacturer and marketer of a broad range of water infrastructure and flow control products.   As of September 30, 2008, its installed products included approximately three million fire hydrants and approximately 10 million iron gate valves.

15.    Plaintiffs have enjoyed great success with the MUELLER Mark through over a century of use and promotion.  Products bearing the MUELLER Mark have appeared everywhere from the 1904 St. Louis World's Fair to cities throughout the United States.  In fact, because of the strength of the MUELLER Mark, Mueller Water products are specified for use by municipal governments in 99 of the top 100 metropolitan areas of the United States.

16.    Mueller International is the owner, and Mueller Co. is a licensee, of numerous trademark registrations incorporating the MUELLER Mark, including:

| Mark | Goods | Reg. Date |
|------|-------|-----------|
| MUELLER & Design (Reg. No. 66,513) | Brass and iron pipe fittings | 12/10/1907 |
| MUELLER (Reg. No. 68,337) | Tapping machines for water and gas mains | 03/31/1908 |
| MUELLER (Reg. No. 85,269) | *Inter alia,* brass and iron plugs, service box covers, service box keys, service box increasers, valves and parts, meter couplings, compression valve fittings, meter union couplings | 02/06/1912 |
| MUELLER (Reg. No. 534,196) | Tapping machines and parts thereof, drilling machines and parts thereof, solid and shell drills, combined drills and taps, tapping sleeves, corporation stop extracting tools, pipe cutting tools, corporation stop inserting tools, pipe end reamers, and floor stands | 12/05/1950 |

| | | |
|---|---|---|
| MUELLER<br>(Reg. No. 537,204) | *Inter alia,* plumbing equipment and parts thereof, namely, brass, iron, and steel plugs, service boxes and increasers therefore, gas service t's and plugs therefore, gas safety nipples and plugs therefore, gas-pin off t's, rubber plugs for t's and nipples, angle valves, stop and drain valves, curbs stops, fire hydrants and parts thereof, gate valves and parts | 02/06/1951 |
| MUELLER 110<br>(Reg. No. 863,810) | Compression couplings and connections for use on gas, oil, water, steam, and other fluid conducting lines | 01/21/1969 |
| MUELLER 112<br>(Reg. No. 975,318) | Compression connection for fluid distribution systems | 12/25/1973 |
| MUELLER PRO-GUARD<br>(Reg. No. 2,349,302) | Protective coating sold as a feature of manually operated valves | 05/16/2000 |

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and these registrations are therefore incontestable. Mueller International also owns a registration for MUELLER MEGA-LITE (Reg. No. 2,924,467) for "drilling machines," which was issued by the PTO on February 1, 2005. True and correct copies of the Certificates of Registration for each of these marks are attached as **Exhibits 1-9**.

17.     Mueller Water has for many decades offered a wide variety of infrastructure and flow-control products under the MUELLER Mark.  As a result of more than a century of use and extensive promotion, Plaintiffs' MUELLER Mark has acquired a high degree of recognition and distinctiveness, and it symbolizes the high quality products and services offered by Plaintiffs.

18.     Consumers are familiar with and identify the MUELLER Mark with Plaintiffs, and goods and services associated with the MUELLER Mark are understood by consumers to be produced, marketed, and distributed by or under Plaintiffs' authority.

**B.      Defendant's Unlawful Activities.**

19.     Defendant owns and operates Mueller Industries, which manufactures, among other products, copper tube and fittings, aluminum and brass forgings, and plastic fittings and valves.

20.     Defendant's predecessor, Mueller Brass Company, originated as a division of the H. Mueller Manufacturing Company.  Mueller Brass Company was sold to Oscar Mueller, one of Hieronymous Mueller's sons, in 1927 and the company has since operated as a separate entity.

21.     As Hieronymus Mueller's family company and the original manufacturer of goods bearing the MUELLER name, Plaintiffs' MUELLER Mark

8

was used extensively and continuously before Defendant offered for sale or sold Defendant's products and services.

22. At the time Defendant began to operate as an independent entity, the goods it manufactured were distinct from those offered under the MUELLER Mark and marketed through different channels of trade. After several decades of co-existence in separate markets, the parties affirmed their understanding in 1996 through an agreement acknowledging that, at that time, Plaintiffs' goods were "predominantly directed to the water and natural gas distribution industry," whereas Defendant's goods were "predominantly directed to the plumbing, refrigeration, and air conditioning industries" (the "1996 Agreement").

23. Under the limited terms of the 1996 Agreement, Defendant applied for and obtained a registration for the mark MUELLER INDUSTRIES, INC. Defendant subsequently, and without permission from Plaintiffs, obtained additional registrations of marks incorporating the term "MUELLER." Defendant is currently the owner of three active registrations incorporating the term "MUELLER":

| Mark | Goods | Reg. Date |
|------|-------|-----------|
| MUELLER INDUSTRIES, INC. (Reg. No. 2,051,777) | Copper tube; steel, copper, and bronze pipe and tube fittings; copper tube straps; non-ferrous metal rods for further manufacture; metal moldings formed by mechanical pressure with and without heat<br><br>Refrigeration and air conditioning equipment, namely, valves, filters, strainers, dryers, copper and brass fittings and forgings, and replacement parts therefor<br><br>Plastic valves (other than machine parts), and replacement parts therefor; plastic pipe fittings<br><br>Manufacture of the following goods to the order and/or specifications of others - tube, pipe, nipples, fittings, rods, valves, dryers, strainers, filters, and parts and accessories therefor in the field of plumbing, refrigeration, and air conditioning, and forging and cold metal extrusion and impact products<br><br>Design of the following goods for others - tube, pipe, nipples, fittings, rods, valves, dryers, strainers, filters, and parts and accessories therefor in the fields of plumbing, refrigeration, and air conditioning, and forging and cold metal extrusion, and impact products | 04/15/1997 |

| MUELLER STREAMLINE CO. (Reg. No. 2,157,112) | Copper tube; steel, copper, and bronze pipe and tube fittings; copper and brass fittings and forgings | 05/12/1998 |
|---|---|---|
| MUELLER REFRIGERATION CO, INC. (Reg. No. 2,522,066) | Refrigeration and air conditioning equipment - namely, filters, strainers, dryers, copper, brass, and bronze fittings and forgings, valves and replacement parts therefore. | 12/25/2001 |

True and correct copies of each Certificate of Registration are attached as **Exhibits 10-12** ("Defendant's Registrations").

24.     Recently, Defendant's goods have become closely related to the goods offered for sale and sold by Plaintiffs under the MUELLER Mark, and many of Defendant's goods are now offered through similar and overlapping channels of trade to those goods offered for sale and sold by Plaintiffs under the MUELLER Mark.

25.     For example, both Plaintiffs and Defendant currently advertise and offer for sale various ball valves through Internet catalogs.

26.     Defendant has also begun using the term "MUELLER" by itself and without any distinctive words in connection with its business and products.  An example of such usage is attached as **Exhibit 13**.

27.     Internet searches for "Mueller" or "Mueller pipe" using search engines such as Google®, Bing™, Yahoo®, and even Amazon®, show results for

both Plaintiffs and Defendant on the same page, and show overlapping and confused uses of Plaintiffs' MUELLER Mark in connection with Defendant's business.  Examples of such search results are attached as **Exhibit 14**.

28.    Business directories now confusingly use Plaintiffs' MUELLER Mark in connection with Defendant's business, as reflected in the example attached as **Exhibit 15**.

29.    Defendant's use of the term "MUELLER" not only is likely to cause confusion, but is causing actual confusion in the marketplace.  For example, potential consignors of Plaintiffs' goods mistakenly referred to Plaintiffs by Defendant's name during contract negotiations with Plaintiffs, Plaintiffs have received multiple telephone calls confusing Plaintiffs and Defendant, and Plaintiffs' insurance carrier has received several claims arising out of defects in Defendant's products.

30.    In furtherance of Defendant's expanded use of Plaintiffs' MUELLER Mark standing alone, Defendant filed an application to register the mark MUELLER & Design (Serial No. 77/741,503), depicted below, for a wide variety of goods including but not limited to metal pipe; steel pipe; steel, copper, and bronze pipe fittings and tube fittings; copper and brass fittings and forgings; plumbing adaptors, namely couplings and joints, made of metal, for pipes; steel

pipe nipples, brass pipe nipples, metal merchant pipe couplings, malleable metal pipe fittings; metal plumbing, steam and gas valves; and plumbing valves, namely, ball valves, gate valves, gas cocks, drain valves, stop valves, and valve parts, among many others.   A true and correct copy of the U.S. Patent and Trademark Office's electronic record of Defendant's application for the MUELLER & Design mark is attached as **Exhibit 16**.



31.    On January 28, 2008, Mueller International and Mueller Co. filed in the United States Patent and Trademark Office a Consolidated Petition for Cancellation of each of Defendant's Registrations, and that cancellation proceeding is currently pending (the "PTO Proceeding").   Because the MUELLER & Design mark application is still before the examining attorney, Plaintiffs have not had an opportunity to oppose the pending application.

32.    Defendant's actions have violated, and continue to violate, prior written understandings as to Defendant's use of the MUELLER name, resulting in actual confusion among consumers.   Defendant's products are already deceiving, confusing, and misleading, and are likely to continue to deceive, confuse, and mislead, prospective purchasers and purchasers into believing that Defendant's

unlicensed and unauthorized goods were licensed by, authorized by or in some manner associated with Plaintiffs. The likelihood of confusion, mistake and deception engendered by Defendant's unlicensed and unauthorized goods and services is causing deception of members of the trade and public and irreparable harm to Plaintiffs.

33.   Defendant has knowingly, willfully, and intentionally expanded its distribution of goods to trade on the goodwill associated with Plaintiffs' strong MUELLER Mark in order to confuse consumers as to the origin of Defendant's goods, thus resulting in Plaintiffs' great and irreparable injury.

34.   Concurrent use of the term "MUELLER" by Plaintiffs and Defendant is no longer possible. Defendant's continued use of the MUELLER name has caused and will continue to cause inevitable confusion among members of the public.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

35.   Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-34.

36.   Defendant is using confusingly similar imitations of Plaintiffs' MUELLER Mark in connection with unlicensed and unauthorized goods and

services.   This conduct has already caused, and is likely to continue causing, confusion, deception, and mistake by creating the false and misleading impression that Defendant's unlicensed and unauthorized goods and services are distributed by Plaintiffs or are associated or connected with Plaintiffs, or have the sponsorship, endorsement or approval of Plaintiffs.

37.    Defendant has used confusingly similar imitations of Plaintiffs' federally registered marks in violation of 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by Plaintiffs' federally registered marks and common law rights, for which Plaintiffs have no adequate remedy at law.

38.    Defendant's actions demonstrate an intentional intent to trade on the goodwill associated with Plaintiffs' federally registered marks and common law rights to Plaintiffs' great and irreparable injury.

39.    Defendant has caused and is likely to continue causing substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to all relief authorized under 15 U.S.C. §§ 1114, 1116, and 1117 to the extent the Court deems just.

## COUNT II
## FEDERAL UNFAIR COMPETITION

40.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-39.

41.     Defendant's unlicensed and unauthorized goods and services have caused, and are likely to continue causing, confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods and services are distributed by Plaintiffs or are associated or connected with Plaintiffs, or have the sponsorship, endorsement or approval of Plaintiffs.

42.     Defendant has made false representations, false descriptions, and false designations of origin in violation of 15 U.S.C. § 1125(a), including, but not limited to, Defendant's commercial use of Plaintiffs' MUELLER Mark, or confusingly similar imitations thereof.  Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation, for which Plaintiffs have no adequate remedy at law.

43.     Defendant's actions demonstrate an intentional intent to trade on the goodwill associated with Plaintiffs to the great and irreparable injury of Plaintiffs.

44.    Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to all relief authorized under 15 U.S.C. §§ 1114, 1116, and 1117 to the extent the Court deems just.

## COUNT III
## UNFAIR AND DECEPTIVE TRADE PRACTICES

45.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-44.

46.    Defendant has engaged in deceptive trade practices within the meaning of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 *et seq.* by: (1) passing off its goods and services as those of Plaintiffs; (2) causing a likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective goods and services; (3) causing a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of Defendant or its goods and services with Plaintiffs or its goods and services; (4) using deceptive representations or designations of origin in connection with Defendant's goods and services; (5) representing that Defendant's goods and services have the sponsorship or approval of Plaintiffs, which they do not have;

and (6) engaging in other conduct that similarly creates a likelihood of confusion or of misunderstanding to consumers, potential consumers, and the public.

47.    Defendant's conduct in passing off its goods and services as those of Plaintiffs has caused, and will continue causing, a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendant's goods and services, a likelihood of confusion as to Defendant's affiliation, connection, or association with Plaintiffs, and has otherwise damaged the public, constituting unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of other states, including California, CAL. BUS. & PROF. CODE §§ 17000 *et seq.* (West 2008); Delaware, DEL. CODE ANN. tit. 6, §§ 2531-36 (2008); Florida, FLA. STAT. ANN. §§ 501.201-213 (West 2008); Illinois, 815 ILL. COMP. STAT. ANN. 510/1-510/7 (West 2008); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211-1216 (2009); Massachusetts, MASS. GEN. LAWS ANN. ch. 93A, §§ 1-11 (West 2006); Michigan, MICH. COMP. LAWS ANN. §§ 445.101 *et seq.* (West 2002); Minnesota, MINN. STAT. ANN. §§ 325D.43-.48 (West 2004); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (2008); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (West 2003); New York, N.Y. GEN. BUS. LAW § 349 (McKinney 2004); Ohio, OHIO REV. CODE ANN. §§ 4165.01-4165.04 (West 2008); Oklahoma, OKLA. STAT. ANN. tit. 78, §§

51-55 (West 2009); Oregon, OR. REV. STAT. ANN. §§ 646.605-646.656 (West 2008); Pennsylvania, 73 PA. CONS. STAT. ANN. §§ 201-1 to 201-9.3 (West 2008); and Wisconsin, WIS. STAT. ANN. § 100.20 and § 100.26 (West 2004).

48.    Defendant's unauthorized use of confusingly similar trademarks is causing and is likely to continue causing substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to all relief available to the extent the Court deems just.

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

49.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-48.

50.    Defendant's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of Plaintiffs unless restrained by this Court. Plaintiffs have no adequate remedy at law for this injury.

51.    Defendant acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the MUELLER Mark and without regard to the likelihood of confusion to customers, potential customers, and the public created by those activities.

52.     Defendant's actions demonstrate an intent to trade on the goodwill associated with the MUELLER Mark to the great and irreparable injury of Plaintiffs.

53.     As a result of Defendant's acts, Plaintiffs have been damaged in an amount not as yet determined or ascertainable.  At a minimum, however, Plaintiffs are entitled to all relief authorized under O.C.G.A. § 51-1-6 to the extent the Court deems just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that:

1.     Defendant and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, be enjoined, preliminarily and permanently, from:

> a.     using marks confusingly similar the MUELLER Mark in connection with Defendant's goods or services;
>
> b.     using any trademark, service mark, name, logo, design, domain name, or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of

or confusingly similar to, or in any way similar to the trademarks, service marks, names, or logos of Plaintiffs;

c.  using any trademark, service mark, name, logo, design, domain name, or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that Defendant's goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by or in any way connected or related to Plaintiffs; and

d.  passing off, palming off, or assisting in passing off or palming off, Defendant's goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

2.  Plaintiffs have all relief authorized under 15 U.S.C. §§ 1114, 1116, and 1117, and O.C.G.A. § 51-1-6, and any other and further relief, to the extent the Court may deem just.

[*Signature on following page*]

This 9th day of September, 2010.

Respectfully submitted,

/s/ R. Charles Henn Jr.
William H. Brewster (Ga. Bar No. 080422)
R. Charles Henn Jr. (Ga. Bar No. 347098)
Sabina A. Vayner (Ga. Bar No. 565211)
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: bbrewster@kilpatrickstockton.com
       chenn@kilpatrickstockton.com
       svayner@kilpatrickstockton.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MUELLER WATER PRODUCTS, INC.,** **MUELLER INTERNATIONAL, INC.,** **and MUELLER CO. LTD.,** | |
| Plaintiffs, | Civil Action No. _____ |
| v. | |
| **MUELLER INDUSTRIES, INC.,** | |
| Defendant. | |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1C and uses 14 point Times New Roman Font.

/s/ R. Charles Henn Jr.
R. Charles Henn Jr.
*Attorney for Plaintiffs*

23